GLENWOOD HOTEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 2919. Promulgated December 31, 1926.

Losses claimed by the petitioner on the sale of stock disallowed.

*H. H. Tooley, C. P. A.*, for the petitioner.
*D. D. Shepard, Esq.*, for the respondent.

The petitioner appeals from the determination of a deficiency of
$7,648.84, income and profits taxes for the fiscal year ended May 31,
1921. The question involved is whether alleged losses of $21,089
and $6,107.03 upon the sale of two separate blocks of stock on May
31, 1921, are deductible.

### FINDINGS OF FACT.

The petitioner is a California corporation, operating the Glenwood
Mission Inn, at Riverside, Calif.

Some time during 1906 or 1907 the petitioner acquired stock in
the Huntington Park Association, which was organized to purchase
a piece of real estate on the outskirts of Riverside. The property
included Mt. Rubidoux, upon which it was proposed to have a semi-
public park, to be reached by a road constructed around the moun-
tain, the funds for which were to be acquired by the subdivision and
sale of lots at the base of the mountain. Huntington and Miller,
who was president of the petitioner, were intimate friends and were
active in the organization and incorporation of the Huntington Park
Association. The petitioner acquired stock expecting to benefit from
the tourist trade.

The petitioner also acquired stock in the Victoria Club, a local
golfing organization, where guests of the hotel were privileged
to play upon payment of a small fee.

The petitioner set up on its books as a debit on June 1, 1920, an
amount of $18,165, under an account headed " Huntington Park As-
sociation stock," which was brought forward from an old ledger.
On April 30, 1921, this account was further debited with an amount
of $2,925, which represents two items of $2,630 and $295 charged to
expense as of May 31, 1919, and disallowed as expense deductions by
a Government examiner, resulting in total debits to the account
of $21,090. The account headed " Victoria Club Stock " was debited
on June 1, 1920, in the amount of $3,125, which was transferred from
an old ledger. There were posted subsequent to June 1, 1920,
amounts totaling $2,983.03, part of which represents items charged

to expense as of May 31, 1918, and May 31, 1919, and disallowed as expense deductions by a Government examiner, making total debits to that account as of May 31, 1921, of $6,108.03. These total debits represent purchases of stock in the Huntington Park Association most of which was acquired in 1906 or 1907, purchases of stock in the Victoria Club, most of which was acquired prior to 1913, but some thereafter, and assessments which were made on the stock of both companies after its purchase by the petitioner.

At a meeting of the board of directors of the petitioner held May 16, 1921, the following resolution was adopted:

> Whereas, the corporation is the owner of certain securities, which, in the opinion of the board of directors, are carried on the books of the corporation in excess of their real value as follows: Stock, Huntington Park Association, $21,090; Stock, Yosemite Park Company, $5,000; Stock, Victoria Club, $6,108.03; Stock, Riverside Realty Company, $1,000; Stock, Riverside Holding Company, $1,900; therefore be it resolved that the President be and is hereby authorized to dispose of any part or all of said securities for cash at the best price obtainable.

On May 31, 1921, the stock of the Huntington Park Association was sold to Alice M. Hutchings for $1, and that of the Victoria Club to Dewitte B. Hutchings, her husband, for $1. Both of these stocks stood in the name of Miller, and Alice M. Hutchings is his daughter. At the time of the sale Miller owned a majority of the stock of the petitioner, his daughter was its secretary, and both she and her husband were stockholders. Miller would not sell the stock to an outsider who would insist upon its transfer on the stock records. He wanted it to remain on the books as originally issued.

As of May 31, 1921, the accounts of the Huntington Park Association and the Victoria Club show a credit in each case of $1 and additional credits of $21,089 and $6,107.03, respectively. The latter amounts are posted from the journal account, profit and loss, as of May 31, 1921.

The amounts of $21,089 and $6,107.03 were claimed as deductions by the petitioner in its return for 1921 and disallowed by the Commissioner.

#### OPINION.

MORRIS: The question presented to us in this proceeding is whether upon the facts hereinabove set forth the petitioner may deduct during the taxable year in question the loss claimed. As to the major portion of the loss the record is lacking in the salient factors for the determination of that question. We are advised of certain book entries carried forward from prior ledgers representing purchases of the stock in question both prior and subsequent to March 1,

1913, and assessments thereon. The record is silent as to the number of shares purchased, the dates thereof, the dates of the assessments, the March 1, 1913, value of the stock held on that date and the purchases and assessments subsequent thereto. The fact that assessments were made on the stock leads us to believe that the March 1, 1913, value was substantially less than cost, which inference is substantiated by the testimony of one of the witnesses to the effect that the stock in question was never worth what it cost and, with the possible exception of the Huntington Park Association, was not even bought for investment purposes but for the indirect benefits flowing from its acquisition in the increased volume of hotel business.

It appears, however, that certain expenditures were made in the fiscal years 1918 and 1919 and charged to expense, which were, after the opening of the new ledger, debited to the two stock accounts in question, representing either additional purchases of stock or assessments. Whether one or the other is immaterial, as in either event such expenditures should be added to the March 1, 1913, value of the stock, and if such value were zero, they would constitute the basis for computing the loss in the absence of specific evidence of other such expenditures after that date. It therefore becomes necessary to determine whether under the instant facts the petitioner may deduct as a loss the difference between those expenditures and the sale price of the stock.

The resolution of the board of directors authorized the sale of the stock for cash at the best price obtainable. There is no evidence of any effort being made to sell the stock to outside interests. On the contrary, Miller did not want any sale to be made which would necessitate a transfer on the stock records. The stock stood in his name; he was president of the petitioner. Two weeks after the passage of the resolution the stock was sold to other stockholders, one his daughter, who was secretary of the corporation, and her husband. The stock was purchased primarily with the idea that through its ownership business would be increased. After the sale the petitioner continued to derive whatever advantage existed from its ownership.

We were not given the benefit of any testimony from the principals in the transaction whose knowledge of the facts might have thrown considerable light thereon. On the basis of the facts presented, we are of the opinion that the sale was not *bona fide*, and that, even to the extent of the expenditures made after March 1, 1913, and identified, minus the sale price of the stock, the petitioner did not sustain a deductible loss.

*The deficiency for 1921 is $7,648.84. Order will be entered accordingly.*